UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
:
U.S. CAPITAL PARTNERS, LLC, *et al.*,   :   USDC SDNY
:   DOCUMENT
:   ELECTRONICALLY FILED
Plaintiffs,   :   DOC #: _____
:   DATE FILED: July 17, 2015
:
v.   :
:
STANWICH CAPITAL ADVISORS, LLC,   :
*et al.*,   :   14 Civ. 4138 (KPF)
:
Defendants.   :   OPINION AND ORDER
------------------------------------------------------X
:
STANWICH CAPITAL ADVISORS, LLC,   :
:
Counterclaimant,   :
:
v.   :
:
U.S. CAPITAL PARTNERS, LLC,   :
:
Counter-Defendant,   :
:
BREAKWATER INVESTMENT   :
MANAGEMENT, LLC, JEFFREY SWEENEY, :
SAIF MANSOUR, CHARLES TOWLE   :
:
Third-Party   :
Defendants.   :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

In response to a complaint alleging violations of federal intellectual property law, Defendant/Counterclaimant Stanwich Capital Advisors, LLC[1] ("Stanwich") asserted counterclaims for breach of contract, fraud, unjust

---

[1] The electronic docket and various submissions employ "L.L.C." and "LLC" inconsistently when referring to the various limited liability corporations implicated in the instant action. For convenience, this Opinion uses "LLC" throughout.

enrichment, and promissory estoppel. It advanced these counterclaims against Plaintiff/Counter-Defendant U.S. Capital Partners, LLC ("USC Partners") and Third-Party Defendants Breakwater Investment Management, LLC ("Breakwater LLC"), Jeffrey Sweeney, Saif Mansour, and Charles Towle. After Stanwich was given an opportunity to amend its counterclaims, USC Partners and the Third-Party Defendants jointly moved to dismiss Stanwich's fraud claim for failure to state a claim, as duplicative of its breach of contract claim, and as improperly brought against the Third-Party Defendants. For the reasons that follow, the motion to dismiss the fraud counterclaim is granted in its entirety.

## BACKGROUND[2]

### A. Factual Background

There was plainly a breakdown in the Stanwich-USC Partners relationship in 2014; the cause of the breakdown is a matter of some dispute between the parties. Stanwich alleges that in or around May 2013, Joel San Antonio and Kieran Ryan of Stanwich began discussions with Jeffrey Sweeney, Chief Executive Officer of USC Partners, a San Francisco-based private investment bank, about a proposed business relationship between the two companies. (ACC ¶ 10). This relationship contemplated the parties working together to provide investment banking services to clients and sharing in the fees generated from such work. (*Id.*). During a meeting in San Francisco in

---

[2] As necessary on a motion to dismiss, the facts set forth in the Amended Counterclaims and Third-Party Complaint (or "ACC") are accepted as true. For convenience, the Complaint is referred to as "Compl.," USC Partners' and Third-Party Defendants' opening brief is referred to as "USC Br.," Stanwich's opposition is referred to as "Stan. Opp.," and the reply is referred to as "USC Reply."

May 2013, USC Partners principals Sweeney and Saif Mansour and director Charles Towle represented to San Antonio and Ryan that USC Partners "was affiliated with and had access to" two funds known as Breakwater Structured Growth Opportunities, LP and Breakwater Growth Opportunities Fund Cayman Ltd. (collectively, the "Breakwater Funds").  (*Id.* at ¶ 11).  The parties from USC Partners represented to the Stanwich parties that "the deals 'sourced' by Stanwich (i.e., presented by Stanwich to Breakwater for the purpose of obtaining financing for clients of Stanwich) would be funded by the Breakwater Funds." (*Id.*).  At that time, in addition to his role as a principal of USC Partners, Mansour was the chairman and managing partner of Breakwater LLC (*Id.*).[3]  "Sweeney and Mansour further represented to [ ] San Antonio and [ ] Ryan that the Breakwater Funds had $150 million in liquid assets that would be used to fund as many deals [as] Stanwich was able to source." (*Id.* at ¶¶ 12, 28).  This was purportedly "far above the industry norm." (*Id.* at ¶ 28).  Stanwich alleges that USC Partners, Breakwater LLC, Sweeney, Towle, and Mansour knew the foregoing representations were false, misleading, and beset with omissions of material facts at the time they were made.  (*Id.* at ¶ 29).

Based on these discussions, in or around July 2013, the parties reached an agreement "to work together to provide investment banking services to certain clients, and to split the fees generated from those clients" in

---

[3]     The Amended Counterclaim provides no explanation of the relationship between the Breakwater Funds and Breakwater LLC  Reading the pleading in the light most favorable to Stanwich, as it must, the Court infers that Mansour's position at Breakwater LLC gave him some insight into, or perhaps control over, the disbursement of the Breakwater Funds.

3

proportions specified in the agreement for each client (the "Agreement"). (ACC ¶ 13).[4] Under the Agreement, "either party was free to work with sources of funding and finders other than each other for the deals in question[]." (*Id.* at ¶ 14). Stanwich alleges it performed under the Agreement by providing services to the clients enumerated in the Agreement, resulting in the generation of hundreds of thousands of dollars of client fees. (*Id.* at ¶ 15). However, Stanwich alleges that USC Partners "repeatedly failed to perform its obligations under the Agreement, such as by failing to find sources of financing or providing financing for deals, including from the Breakwater Funds that USC Partners had claimed to maintain for that purpose." (*Id.* at ¶ 16). According to Stanwich, on March 26, 2014, USC Partners "abruptly terminated the Parties' relationship, without notice and without paying Stanwich its agreed-upon portion of the Client Fees generated from Stanwich's provision of services" to the clients listed in the Agreement. (*Id.* at ¶ 17). Sometime after the termination of the relationship, Stanwich discovered that "USC Partners had never used the Breakwater Funds to finance any deals (including the deals Stanwich and USC Partners worked on together)." (*Id.* at ¶ 18).

---

[4]   It is unclear from the pleadings and the parties' submissions whether the Agreement was oral, written, or some combination of the two. The Amended Counterclaim references an agreement (*see* ACC ¶ 13), but no written memorialization of the Agreement has been submitted to the Court. In consequence, to the extent the parties diverge in their recitation or interpretation of the terms of the Agreement, the Court will construe the terms in favor of Stanwich, the non-moving party.

4

B.     **Procedural Background**

USC Partners filed the Complaint in this action against Stanwich, Joel San Antonio, Brandon San Antonio, Thomas Moran, Kieran Ryan, and Kenneth Dotson on June 9, 2014. (Dkt. #2). In it, USC Partners offers a different account of the breakdown of the relationship, focusing on efforts by certain of the individual Defendants to establish a USC Partners office in New York in late 2012 and early 2013. (*See* Compl. ¶¶ 15-61). As causes of action, the Complaint alleges breaches of fiduciary duty, misappropriation of trade secrets, unjust enrichment, copyright infringement, and violations of the Lanham Act in the form of trade dress infringement and unfair competition. (*Id.* at ¶ 1).

After several extensions were granted, on August 5, 2014, Defendants filed their Answer and Counterclaims. (Dkt. #12). On September 11, 2014, USC Partners and the Third-Party Defendants filed a pre-motion letter, seeking to dismiss Stanwich's fraud counterclaim. (Dkt. #27). The Court held a conference on October 2, 2014, at which time Stanwich proposed amending their counterclaims to remedy any alleged deficiencies. Stanwich filed an Amended Counterclaims and Third-Party Complaint on October 17, 2014 (Dkt. #32), and USC Partners and the Third-Party Defendants filed another pre-motion letter, again seeking leave to move to dismiss the counterclaim alleging fraud (Dkt. #35). The Court set a schedule for the motion, which was fully briefed as of January 21, 2015. (Dkt. #37-41).

## DISCUSSION

A. **Applicable Law**

   1. **Motions to Dismiss**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the non-moving party's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  Thus, "[t]o survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a party's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  "Where a complaint [or counterclaim] pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, "the tenet that a court must accept a complaint's [or counterclaim's] allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

### 2. Claims for Fraud

To state a claim for common law fraud under New York law, a plaintiff must allege facts showing: "[i] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [ii] made for the purpose of inducing the other party to rely upon it, [iii] justifiable reliance of the other party on the misrepresentation or material omission, and [iv] injury." *Premium Mortg. Corp.* v. *Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co.* v. *Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).

Of course, "[i]n a federal [ ] action, such a claim must be pleaded with particularity" pursuant to Rule 9(b). *Premium Mortg. Corp.*, 583 F.3d at 108. Specifically, "the [claim] must: [i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made, and [iv] explain why the statements were fraudulent." *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). Additionally, to satisfy Rule 9(b), a claim must "allege facts that give rise to a strong inference of fraudulent intent." *Berman* v. *Morgan Keenan & Co.*, 455 F. App'x 92, 95 (2d Cir. 2012) (summary order) (internal quotation marks omitted) (quoting *Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). "The requisite 'strong inference' of fraud may be established either [i] by alleging facts to show that defendants had both motive and opportunity to commit fraud, or [ii] by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290-91. The particularity requirement of Rule 9(b) "serves to 'provide a defendant with fair

notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" *Rombach* v. *Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting *O'Brien* v. *Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

A central issue here involves the relationship between Stanwich's fraudulent inducement claim and its breach of contract claim — an issue that, as suggested above, is complicated somewhat by the absence of a written agreement in the record. Where a fraud claim "is premised upon an alleged breach of contractual duties, and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie." *Cont'l Petroleum Corp.* v. *Corp. Funding Partners, LLC*, No. 11 Civ. 7801 (PAE), 2012 WL 1231775, at *10 (S.D.N.Y. Apr. 12, 2012) (internal quotation marks omitted) (quoting *McKernin* v. *Fanny Farmer Candy Shops, Inc.*, 574 N.Y.S.2d 58, 59 (2d Dep't 1991)). Therefore, to maintain a claim for fraudulent inducement that does not merge with a breach of contract claim, Stanwich must "(i) demonstrate a legal duty separate from the duty to perform under the contract … ; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract … ; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages[.]" *Bridgestone Firestone, Inc.* v. *Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted).

Here, Stanwich bases its fraudulent inducement claim on the second of these prongs: It alleges that there were fraudulent misrepresentations collateral or extraneous to the contract. As to this category, there is a key distinction between a "misrepresentation of present fact," which is actionable, and "a misrepresentation of future intent to perform under the contract," which merges with the contract claim and thus cannot support a separate fraud claim. *See, e.g., Gosmile, Inc.* v. *Levine*, 915 N.Y.S.2d 521, 524 (1st Dep't 2010) ("To state a claim for fraudulent inducement, there must be a knowing misrepresentation of material present fact, which is intended to deceive another party and induce that party to act on it, resulting in injury.... [A] misrepresentation of present fact, unlike a misrepresentation of future intent to perform under the contract, is collateral to the contract, even though it may have induced the plaintiff to sign it, and therefore involves a separate breach of duty." (citations omitted)). In other words, "simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder is insufficient to state an independent tort claim." *Telecom Int'l Am. Ltd.* v. *AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (citations and internal quotation marks omitted).

## B.  Analysis

Stanwich's fraud claims fail because they do not allege sufficient facts to satisfy Rule 9(b), and because Stanwich does not allege a "misrepresentation of present fact" that would distinguish its fraud claim from its breach of contract

9

claim. In this regard, the Court counts six representations that Stanwich challenges in its fraud counterclaim: "that USC Partners was [i] affiliated with and [ii] had access to the Breakwater Funds …[;] that deals sourced by Stanwich [iii] would be financed through the Breakwater Funds …[; and] that the Breakwater Funds had [iv] $150 million [v] in liquid assets [vi] that would be used to fund as many deals [as] Stanwich was able to source." (*See* ACC ¶¶ 27-28 (alterations added)). Stanwich alleges that these representations were "false, misleading, and omitted material facts" (*id.* at ¶ 29), and, further, that they were made "deliberately, knowingly, and with the intent to induce Stanwich to form a business relationship with USC Partners, so that USC Partners could benefit from the Client Fees generated by work done by Stanwich" (*id.* at ¶ 30).

As an initial matter, Stanwich has failed sufficiently to "identif[y] the speaker" of these statements, as USC Partners and the Third-Party Defendants argue in their motion. (USC Br. 7-8). At no point does Stanwich attribute any one representation to any one individual. "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Luce*, 802 F.2d at 54; *see also Mills*, 12 F.3d at 1175 (dismissing fraud allegations where plaintiffs "ha[d] not linked the alleged fraudulent statements to particular Directors"). Accordingly, Stanwich's fraud claims are dismissed for failure to satisfy Rule 9(b) on this ground.

Furthermore, Stanwich has neither specified which of these six statements it "contends were fraudulent," nor "explain[ed] why the statements

were fraudulent." *Lerner*, 459 F.3d at 290.  Was it false that USC Partners was "affiliated with" the Breakwater Funds?  Or, even if they were "affiliated," was it false that they had "access" to the Funds?  Did the Breakwater Funds not truly have $150 million in assets?  Or was it that those assets were not "liquid," as represented?  Or was it simply false that USC Partners and the Third-Party Defendants intended to use the Blackwater Funds for deals with Stanwich? Stanwich's allegation that when "USC Partners, Breakwater LLC, and Messrs. Sweeney, Towle and Mansour made the [r]epresentations [i.e., all of the representations listed above], each of them knew that the [r]epresentations were false, misleading, and omitted material facts" (ACC ¶ 29) is not enough. To satisfy Rule 9(b), Stanwich must specify which representations were false and why each one was false.  *Lerner*, 459 F.3d at 290; *see, e.g., DiMuro* v. *Clinique Labs., LLC*, 572 F. App'x 27, 30 (2d Cir. 2014) (summary order) (affirming dismissal of complaint where pleading "inconsistent with Rule 9(b)'s particularity requirement in that the complaint fail[ed] to specify which of Clinique's alleged statements [we]re fraudulent and with regard to what product"); *see id.* (observing that "no matter how many times" plaintiffs used labels like "false, misleading, and/or deceptive" or "false and misleading," those labels were "not facts, and certainly not facts sufficient for Rule 9(b)").

The one stab that Stanwich takes at explaining why these statements are false is wholly speculative and non-specific, despite its avowal to the contrary: "Specifically, each of [USC Partners and the Third-Party Defendants] knew that the Breakwater Funds either did not have assets to fund deals, or that the

11

assets of the Breakwater Funds have never been used to finance any deals that USC Partners has been retained to work on, or both." (ACC ¶ 29). Stanwich's artful deployment of the disjunctive is revealing: Stanwich does not, apparently, know what was false or how it was false. The first half of Stanwich's allegation amounts to a supposition that the Breakwater Funds *might* not have, in fact, contained the $150 million as represented. This speculation does not satisfy Rule 9(b). *See Shields* v. *Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (stating Rule 9(b) is no "license to base claims of fraud on speculation and conclusory allegations"); *see also Luce* v. *Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) (upholding dismissal of certain claims under Rule 9(b) because, although plaintiffs alleged that "defendants made oral and written misrepresentations of their net worth and their ability to make the partnership business successful," the plaintiffs "[did] not state facts on which these allegations are based ... or why those representations were false").

Moreover, the latter part of the sentence regarding the historical use of the Breakwater Funds has no clear significance to Stanwich's fraud claim. Stanwich did not assert that it had been fraudulently represented that the Breakwater Funds *had* been used to fund other deals. And even if they had not been used to fund other deals, that fact has no apparent bearing on whether they would or could be used to fund deals going forward. This allegation — that USC Partners and the Third-Party Defendants *might* have known "that the assets of the Breakwater Funds ha[d] never been used to

finance any deals that USC Partners ha[d] been retained to work on" (ACC ¶ 29) — does nothing to elucidate why any statement made was false.

Stanwich's separate allegation that USC Partners and the Third-Party Defendants falsely represented "that deals sourced by Stanwich would be financed through the Breakwater Funds," when they did not intend to fund the deals in that manner (ACC ¶ 27), fares no better under Rule 9(b). Stanwich alleges nothing evidencing this intention other than the fact that USC Partners and Third-Party Defendants never fulfilled their obligations under the agreement. (*See*, *e.g.*, ACC ¶ 16). While an alleged breach of contract may provide some measure of circumstantial evidence of fraudulent intent, it is not enough to give rise to a "strong inference" of fraud under Rule 9(b). "Contractual breach, in and of itself, does not bespeak fraud, and generally does not give rise to tort damages." *Mills* v. *Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) (affirming dismissal of fraud claims under Rules 12(b)(6) and 9(b)). Without more, the Court cannot infer fraudulent intent, especially given that breaches may be undertaken for "legitimate business reasons." *Id.* (declining "to infer fraudulent intent from the fact that [defendant] made a number of contracts ... and never performed any of them" because "[a] contract may be breached for legitimate business reasons"). Stanwich's fraud claim must, therefore, be dismissed under Rule 12(b) for failure to state a claim because it does not satisfy Rule 9(b).

Even if Stanwich had succeeded in pleading with sufficient particularity under Rule 9(b), which it has not, Stanwich has additionally failed to allege

13

misrepresentations that are collateral or extraneous to the parties' agreement. Stanwich has alleged no "misrepresentation of present fact": indeed, as discussed above, it has not clearly identified what any present factual misrepresentation may have been.  Despite Stanwich's circular arguments to the contrary (*see* Stan. Opp. 5), its fraud claim is premised entirely on its allegation that USC Partners and the Third-Party Defendants did not follow through on their contractual obligations (*see* ACC ¶ 16 (alleging that USC Partners "repeatedly failed to perform its obligations under the Agreement, such as by failing to find sources of financing or providing financing for deals, *including from the Breakwater Funds that USC Partners had claimed to maintain for that purpose*" (emphasis added))), and the "infer[ence]" therefrom that USC Partners and the Third-Party Defendants "had no intention of using Breakwater to fund those deals" (Stan. Opp. 5).[5]  This is a quintessential attempt to "dress[ ] up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder[.]"  *Telecom Int'l*, 280 F.3d at 196; *see also Bridgestone Firestone*, 98 F.3d at 19-20 (noting that even "intentionally-false

---

5    In support of its arguments that the promise to use Breakwater Funds was collateral to the parties' agreement, Stanwich cites the case *PI, Inc.* v. *Quality Products, Inc.*, 907 F. Supp. 752 (S.D.N.Y. 1995).  The court in *PI* found that an individual's purported misrepresentations were sufficiently collateral to a company's contractual representations for the purpose of exercising personal jurisdiction over that individual.  *See id.* at 762.  That simply is not the instant inquiry.  Indeed, the *PI* court went on to dismiss the fraud claim against all defendants under Rule 9(b), noting, "Mere nonperformance of contractual agreements does not give rise to an inference of fraudulent intent[.]"  *Id.* at 763.  If anything, *PI* supports the dismissal of Stanwich's fraud claim on the very grounds on which the Court dismisses it here.

14

statements ... indicating [an] intent to perform under the contract ... [are] not sufficient to support a claim of fraud under New York law").

Stanwich argues in its opposition that use of the Breakwater Funds was not a specific term of the Agreement, and that therefore it is collateral to the Agreement. (Stan. Opp. 7). This argument, however, is belied by Stanwich's own pleading, which, as discussed in the preceding paragraph, makes clear that USC Partners' failure to fulfill contractual obligations is tied to their failure to use the Breakwater Funds. (*See* ACC ¶ 16). The promise to use the Breakwater Funds need not be an explicit term of the Agreement — it is enough that it amounts to a statement of the manner in which USC Partners and Third-Party Defendants intended to fulfill their obligations under the contract. Such a claim is not actionable separate and apart from a breach of contract claim. *See Cont'l Petroleum*, 2012 WL 1231775, at *10 (holding fraud claim merged with contract claim where plaintiffs alleged that defendants generally represented to their clients that they would provide letters of credit conforming to the requirements of a transaction, when they in fact would not); *Fin. Structures Ltd.* v. *UBS AG*, 909 N.Y.S.2d 45, 47-48 (1st Dep't 2010) ("The essence of the fraudulent inducement cause of action is that defendants allegedly misrepresented to plaintiffs their intentions with respect to the manner in which they would manage the underlying assets, and thus plaintiffs allege a misrepresentation of future intent rather than a misrepresentation of present fact, which is not sustainable as a cause of action separate from breach of contract."); *cf. M.E.S., Inc.* v. *Safeco Ins. Co. of Am.*, No. 10 Civ. 2798

15

(PKC) (VMS), 2014 WL 2931398, at *7 (E.D.N.Y. June 27, 2014) (finding fraud count survived as pleaded where oral promise that plaintiff would have right to appeal was not a contract term and was therefore extraneous to the contract).[6] Accordingly, for the independent reason that Stanwich's fraud claim merges with its breach of contract claim under New York law, Stanwich's fraud counterclaim must be dismissed.[7]

## CONCLUSION

For the foregoing reasons, USC Partners' and the Third-Party Defendants' motion to dismiss the fraud counterclaim is GRANTED, and that counterclaim is dismissed.  The Clerk of Court is directed to terminate the motion pending at docket entry 38.

USC Partners and the Third-Party Defendants are hereby ORDERED to file an answer on or before **August 7, 2015**.  The parties are further ORDERED to submit via e-mail (Failla_NYSDChambers@nysd.uscourts.gov) a joint Proposed Civil Case Management Plan and Scheduling Order in PDF format (available at http://nysd.uscourts.gov/judge/Failla) on or before **August 14, 2015**.  If the parties' proposal deviates from the suggested intervals for

---

[6] Moreover, as USC Partners and the Third-Party Defendants argue (USC Br. 6; USC Reply 5), the damages Stanwich seeks under its fraud claim are recoverable as contractual reliance and expectations damages, further supporting that the fraud claim and the breach of contract claim are duplicative.  *See Laurel Hill Advisory Grp., LLC* v. *Am. Stock Transfer & Tr. Co., LLC*, 977 N.Y.S.2d 213, 215 (1st Dep't 2013) (affirming dismissal of fraud claims where "[t]he fraud alleged [wa]s based on the same facts that underlie the contract counterclaim, [wa]s not collateral to the contract and d[id] not call for damages that would not be recoverable under a contract theory").

[7] Having dismissed Stanwich's fraud counterclaim in its entirety, the Court need not separately consider the parties' arguments as to whether the counterclaim was properly brought against the Third-Party Defendants.

16

discovery deadlines, they shall additionally submit a joint letter explaining the basis for the requested deviation.

    SO ORDERED.

Dated:    July 17, 2015
              New York, New York

                                               KATHERINE POLK FAILLA
                                               United States District Judge